### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

PATRICK DUBOSE,

      Movant,

v.

                                 Cv. No. 2:17-cv-02396-SHM-tmp
                                 Cr. No. 2:14-cr-20136-SHM-01

UNITED STATES OF AMERICA,

      Respondent.

---

### ORDER GRANTING MOTIONS TO AMEND
### ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255
### ORDER DENYING CERTIFICATE OF APPEALABILITY
### ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
### AND
### ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

---

Before the Court are the motion pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") and motions to amend filed by Movant Patrick Dubose. (ECF Nos. 1, 8 & 9.) The motions to amend are **GRANTED**. On November 17, 2017, the United States filed a response contending that Movant's § 2255 motion is without merit. (ECF No. 5.) On January 8, 2018, Dubose filed a reply to the United States' response. (ECF No. 7.) For the reasons stated below, the § 2255 motion is **DENIED**.

## I. PROCEDURAL HISTORY

### A. Criminal Case No. 2:14-20136-SHM-01

On May 27, 2014, a federal grand jury in the Western District of Tennessee returned a single count indictment against Dubose charging him with possession of a firearm after a felony conviction. (Criminal ("Cr.") ECF No. 1.) On December 10-12, 2014, this Court presided at a jury trial, at which the jury found Dubose guilty as charged. (Cr. ECF Nos. 26-29.)

On April 27, 2015, Dubose filed a motion for a new trial, alleging that tapes provided by the police after trial constituted new evidence and that, had the tapes been available at trial, the jury would likely have acquitted Dubose.  (Cr. ECF No. 37.)  The Court denied the motion after determining that the new evidence would serve only to impeach the testimony of the task force officers, was not material to Dubose's guilt, and would not likely have produced an acquittal. (Cr. ECF No. 46.)

The Court conducted a sentencing hearing on July 31, 2015, at which Dubose was sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), to the statutory minimum of 180 months in prison.  (Cr. ECF Nos. 48-49.)  The ACCA requires a fifteen-year mandatory minimum sentence for a defendant convicted under 18 U.S.C. § 922(g) who has three prior convictions for a violent felony or a serious drug offense.  18 U.S.C. § 924(e)(1).  On July 31, 2015, Dubose filed a notice of appeal.  (Cr. ECF No. 50.)  He contended that the Court had erred by denying the motion for a new trial.  The United States Court of Appeals for the Sixth Circuit determined that the district court did not abuse its discretion by denying the motion and affirmed Dubose's conviction and sentence.  *United States v. Dubose*, No. 15-5846 (6th Cir. June 2, 2016) (Cr. ECF No. 58), *cert. denied*, No. 16-6424 (Nov. 29, 2016).  (Cr. ECF No. 61.)

### B.   Civil Case Number 17-2396-SHM-tmp

On June 8, 2017, Movant filed the § 2255 motion alleging that:

(1)    the prosecution failed to disclose evidence favorable to Movant in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963); and

(2)    counsel provided ineffective assistance by failing to raise a *Brady* claim on direct appeal.

2

(ECF No. 1-1 at 7.)  Movant attempts to demonstrate cause and prejudice for his default of Issue 1 by alleging in Issue 2 that counsel provided ineffective assistance.  (*Id.*)  The Court will not address Issue 1 as a separate issue.

Dubose has raised a third claim in the motions to amend:

(3)     Movant's § 922(g) conviction is invalid under *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

(ECF Nos. 8 & 9.)

## II.     LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).  "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  This rule is not absolute:

If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In those rare instances where the

3

defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Grant*, 72 F.3d at 506.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously.  *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).  Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."  Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").  "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."  *Id.* The movant is entitled to reply to the Government's response.  Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'"  *Valentine v.*

4

*United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).  "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).  Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case.  *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . .").  Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Dubose did not raise Issue 1 on direct appeal.  He attempts to demonstrate cause and prejudice for his default of Issue 1 by alleging that counsel was ineffective for failing to raise the issue on appeal.  "Attorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001), quoting *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999), citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991).  To constitute "cause" to excuse default, the attorney error must satisfy the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  [*Strickland*, 466 U.S.] at 689.  The

5

challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

A criminal defendant is entitled to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  The failure to raise a nonfrivolous issue on appeal

---

[1]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

does not constitute per se ineffective assistance of counsel, as "[t]his process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). Claims of ineffective assistance of appellate counsel are evaluated using the *Strickland* standards. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); *Smith v. Murray*, 477 U.S. at 535-36 (failure to raise issue on appeal). To establish that appellate counsel was ineffective, a prisoner

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal - that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith v. Robbins,* 528 U.S. at 285 (citation omitted).

An appellate counsel's ability to choose those arguments that are more likely to succeed is "the hallmark of effective appellate advocacy." *Matthews v. Parker*, 651 F.3d 489, 523 (6th Cir. 2011) (quoting *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003)). It is difficult to show that appellate counsel was deficient for raising one issue, rather than another, on appeal. *See id.* "In such cases, the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present." *Id.* Defendant must show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

## III.   ANALYSIS

### A.   Brady Violation

Dubose contends that counsel should have raised a *Brady* violation on direct appeal. (ECF No. 1-1 at 7.) Dubose was provided the car-to-car communications approximately one month after trial. (Cr. ECF No. 37 at 3.) The car-to-car transmissions contained no communications between any of the officers. (*Id.* at 3-4.) The United States responds that Dubose cannot demonstrate deficient performance or actual prejudice. (ECF No. 5 at 15.)

The Due Process Clause is violated when prosecutors withhold from the defense evidence favorable to the accused where the evidence is material either to guilt or punishment. That duty to disclose "is applicable even though there has been no request by the accused . . . , and . . . the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted). A *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or

8

inadvertently; and prejudice must have ensued." *Id.* at 281-82.  A showing of prejudice requires

that the suppressed evidence be material.  Evidence is "material" for *Brady* purposes if "there is

a reasonable probability that the result of the trial would have been different if the suppressed

[evidence] had been disclosed to the defense."  *Strickler*, 527 U.S. at 289 (internal quotation

marks omitted); *see also United States v. Bagley*, 473 U.S. 667, 682 (1985) ("The evidence is

material only if there is a reasonable probability that, had the evidence been disclosed to the

defense the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome.") (internal quotation marks

omitted).

> [A] showing of materiality does not require demonstration by a preponderance
> that disclosure of the suppressed evidence would have resulted ultimately in the
> defendant's acquittal (whether based on the presence of reasonable doubt or
> acceptance of an explanation for the crime that does not inculpate the defendant).
> *Bagley*'s touchstone of materiality is a reasonable probability of a different result,
> and the adjective is important.  The question is not whether the defendant would
> more likely than not have received a different verdict with the evidence, but
> whether in its absence he received a fair trial, understood as a trial resulting in a
> verdict worthy of confidence.  A "reasonable probability" of a different result is
> accordingly shown when the government's evidentiary suppression undermines
> confidence in the outcome of the trial.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks and citations omitted).[2]

This standard is similar to the "prejudice" component of an ineffective assistance of counsel

claim.  *Id.* at 436; *Bagley*, 473 U.S. at 682; *cf. United States v. Agurs*, 427 U.S. 97, 112-13

(1976) ("The proper standard of materiality must reflect our overriding concern with the justice

of the finding of guilt.  Such a finding is permissible only if supported by evidence establishing

---

[2]The Supreme Court emphasized, however, that this standard is not satisfied by a
showing that the suppressed evidence "might" have changed the outcome of the trial.  *Strickler*,
527 U.S. at 289; *see also id.* at 291 (a petitioner must establish a reasonable probability, rather
than a reasonable possibility, of a different result).

guilt beyond a reasonable doubt.  It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.  This means that the omission must be evaluated in the context of the entire record.  If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.  On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.") (footnotes omitted).

Dubose has established the first two components of a *Brady* violation: the car-to-car communications were not disclosed before trial, whether willfully or inadvertently.  The car-to-car communications were potentially useful to impeach the officers' testimony that car-to-car transmissions were made to communicate their respective locations and to impeach the officers' statements that Brewer had used a car-to-car transmission to instruct Campany to detain the suspect.

Dubose has not established the third component of a *Brady* violation.  He fails to explain how the absence of car-to-car communications was material to his guilt.  The Court previously reviewed the materiality of the car-to-car communications:

> The task force officers testified that they communicated their respective locations using car-to-car communications.  The officers also testified that Brewer used the car-to-car frequency to instruct Campany to detain the suspect.  The officers did not, however, testify that car-to-car radio transmissions were used to discuss whether the suspect had been seen possessing or throwing the firearm.

(Cr. ECF No. 46 at 13 (Cr. Record ("R.") citations omitted).)

The Court also analyzed the likelihood of acquittal had the car-to-car recordings been provided before trial:

Aside from potentially affecting the perceived credibility of the officers through impeachment, the absence of recorded car-to-car communications does not significantly change the proof in this case. Although the absence of recorded transmissions might suggest that the officers did not coordinate with each other as they claimed, it does not materially affect whether Dubose possessed the firearm. Officer Brewer testified that he observed Dubose throw the object over the fence and, after Campany had arrived and the officers were outside their vehicles, Brewer pointed to the location so that Campany could retrieve the firearm. That testimony is not based on radio transmissions. The absence of those transmissions does not bolster the testimony of Fulcher, who claimed that she did not see Dubose throw the firearm and that the events she described occurred in 2014. The new evidence Dubose has discovered would not be likely to produce an acquittal.

(*Id.* at 14-15 (Cr. R. citations omitted.).)

On direct appeal, the Sixth Circuit opined:

We need not reach the materiality issue because, even assuming that the statements were material, the recordings are unlikely to have led the jury to acquit. Even if the defendant introduced evidence that there were no extant car-to-car recordings from that night, that would not cast doubt on the conviction. No evidence showed that the officers *only* communicated in this way. Nor would this form of communication have been the only means of communication, given that at least two of the officers *exited* their cars during the investigation and arrest. With or without the car-to-car recordings, the evidence at trial still would have shown this: Brewer still would have testified that he saw Dubose carry and throw a firearm; Brock still would have testified that he found a gun precisely where Brewer said Dubose had thrown it; all three officers still would have testified that Dubose matched the description of the suspect in the 911 call. . . .

*United States v. Dubose*, No. 15-5846 (6th Cir. June 2, 2016) (Cr. ECF No. 58 (emphasis in original).)

Dubose has not demonstrated that a *Brady* claim would have made a stronger appellate argument than the issue counsel chose to raise. Because Dubose cannot show that there is a reasonable probability that inclusion of the issue would have changed the result of the direct appeal, he cannot demonstrate prejudice. Movant cannot establish "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  This issue is without merit and is **DENIED**.

### B.    Applicability of *Rehaif*

Dubose contends that his § 922(g) conviction is invalid under *Rehaif*.  (ECF Nos. 8 & 9.)  In June 2019, the Supreme Court held that, to prove a violation of § 922(g), the government "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  *Rehaif*, 139 S. Ct. at 2200.  Dubose contends that the United States failed to prove that Dubose knew that he possessed a firearm and that Dubose knew he belonged to the relevant category of persons barred from possessing a firearm.  (*Id.*)  Dubose was convicted and his conviction was affirmed before *Rehaif* was decided.

Dubose was indicted before *Rehaif* was decided, and his indictment was sufficient to allege a violation of § 922(g) because the language mirrored the statute and included specific details of the alleged violation.  (Cr. ECF No. 1.)  Dubose did not challenge the failure to allege scienter on direct appeal.  An indictment that was not challenged below "is 'construed liberally in favor of its sufficiency,'" *United States v. Olive*, 804 F. 3d 747, 752 (citation omitted).  Nothing here indicates that "the indictment cannot within reason be construed to charge a crime." *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) (citation omitted).

Dubose's jury was not required to find that Dubose knew he was a felon.  On the second day of Dubose's trial, the parties stipulated that, "on the date[] of the charged conduct, August 6, 2013, Patrick Dubose was a convicted felon as described at 18[] United States Code Section 922(g)(1)" and agreed "that it will not be necessary for the Government to present such evidence to the jury."  (Cr. ECF No. 42 at Page 317.)  Dubose signed the stipulation.  (*Id.* at Page 318.)

*United States v. Ward*, 957 F/3d 691 (6th Cir. April 30, 2020).  "Although the stipulation of a prior felony does not automatically establish knowledge of felony status, it is strongly suggestive of it."  *United States v. Conley*, 802 Fed. Appx. 919, 923, (6th Cir. Feb. 5, 2020).

Dubose offers no reason that the government could not prove he knew he was a felon. The record demonstrates that Dubose had three previous aggravated robbery convictions, all committed with a firearm.  (Cr. ECF No. 56 at 14, 21.)  At the time of his arrest in the instant case, he was on parole on his sentence for the aggravated robberies.  (*Id.*)  Pursuant to *Old Chief v. United States*, 519 U.S. 172, 191–92 (1997), the government was prohibited from introducing any evidence of those felonies because of Dubose's stipulation.  That evidence would not have been prohibited had Dubose contested the knowledge-of-status element.  The record "reveals no reason to think that the government would have had any difficulty at all in offering overwhelming proof that [Dubose] knew that he" was a felon.  *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019).  The Sixth Circuit has joined other circuits holding that, where there is clear evidence in the record from which to infer that the defendant knew he was a felon, failure to instruct the jury does not affect the defendant's substantial rights or the fairness or integrity of the proceedings.  *United States v. Ward*, 957 F.3d 691, 695 (6th Cir 2020) (citing *United States v. Miller*, 954 F.3d 551, 559-60 (2d Cir. 2020); *United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019); *United States v. Hollingshed*, 940 F.3d 410, 416 (8th Cir. 2019); *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019); *United States v. Hobbs*, 953 F.3d 853, 858 (6th Cir 2020); *United States v. Conley*, 802 Fed. App'x 919, 923-24 (6th Cir. 2020).

The Western District of Tennessee and other district courts have concluded that *Rehaif* does not apply retroactively to cases on collateral review.  *Wright v. United States*, 2020 WL 718237 (W.D. Tenn. Feb. 12, 2020) ("'While the Sixth Circuit has not yet addressed' *Rehaif*'s

retroactivity, this Court agrees with the district court decisions in this Circuit holding that the ruling in *Rehaif* does not apply retroactively to cases on collateral review.  *See Dowlen v. United States*, 2020 WL 489460, at *2 (M.D. Tenn. Jan. 30, 2020) (collecting cases)"); *Doyle v. United States*, 2019 WL 6351255 (S.D. Ohio Nov. 27, 2019) (citing *Moore v. United States*, 2019 WL 4394755, at *2 (W.D. Tenn. Sept. 12, 2019)).  Circuit courts of appeal have determined the same.  *See In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019) ("*Rehaif* did not announce a new rule of constitutional law made retroactive to cases on collateral review."); *In re Sampson*, 954 F.3d 159 (3rd Cir. 2020) ("*Rehaif* did not state a rule of constitutional law at all.  Rather, it addressed what the statutes enacted by Congress require for a conviction under 18 U.S.C. §§ 922(g) and 924(a)(2) . . . [I]t did not set forth a new rule of constitutional law as contemplated by § 2255(h)."  Because defendant had not set forth a "retroactively applicable rule of constitutional law," his application to file a second or successive motion to vacate his sentence was denied.)  This issue is without merit and is **DENIED**.

## IV.    CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Movant's conviction and sentence are valid and, therefore, his motion is **DENIED**.  Judgment shall be entered for the United States.

## V.    APPELLATE ISSUES

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.  The COA must indicate the specific issue or issues that satisfy the

required showing.  28 U.S.C. § 2253(c)(2), (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).  Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).  In this case, for the reasons previously stated, Movant's claim lacks substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  The Court therefore **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a).  *Kincade*, 117 F.3d at 952.  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**. If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 3rd day of June 2020.

*/s Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE